IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   03-cv-02633-PSF-PAC
        (Consolidated with Civil Action No. 04-cv-00319-PSF-PAC[1])

LILLIAN BARTON,

        Plaintiff(s),

v.

CITY AND COUNTY OF DENVER,
OFFICER R. BLEY,[2] Badge No. 99006,
OFFICER N. SAGEN, Badge, No. 96-021,
OFFICER JOHN DOE,[3]
MAYOR JOHN HICKENLOOPER, in his official capacity,
WELLINGTON WEBB, as former Mayor, in his official capacity,
GERALD R. WHITMAN, Chief of Police, City and County of Denver in his office capacity only,
J. WALLACE WORTHAM, JR., former Denver City Attorney, in his official capacity only,
CHRIS RAMSEY, former Denver Deputy City Attorney, in his official capacity only,

        Defendant(s).

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

        In this *pro se* civil rights action under 42 U.S.C. §1983, plaintiff asserts Fourth

Amendment violations and state law tort claims arising from an incident involving plaintiff

and the defendant Denver police officers.[4]  The matter before the court is Defendants'

---

        [1]Rudy Sandoval is named as a defendant in Civil Action No. 04-cv-00319-PSF-PAC, along with the defendants named in Civil Action No. 03-cv-02633-PSF-PAC.

        [2]"Officer Bley" is identified correctly as "Richard Blea" in Civil Action 04-cv-00319-PSF-PAC.

        [3]"Officer John Doe" is identified correctly as "Josh Vasconcellos" in Civil Action 04-cv-00319-PSF-PAC.

        [4]Plaintiff was represented by counsel until October 19, 2004 when the District Judge granted counsel's motion to withdraw.

Motion for Partial Summary Judgment [filed August 15, 2005].  The case was referred to the undersigned on January 12, 2004 to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions.  The motion for partial summary judgment is fully briefed and the court has determined that oral argument would not be of material assistance.

I.

The following facts are undisputed or are construed in plaintiff's favor for purposes of defendants' summary judgment motion. On February 24, 2003, plaintiff received a telephone call from Lawrence Gomba, her ex-husband and house mate, asking her to pick him up at a Phillips 66 gas station at Sixth Avenue and Federal Boulevard and to give him a ride home to get a replacement tire for his truck.  (Deposition of Lillian Barton, attached to Motion for Partial Summary Judgment ("MSJ") as Ex. A, at 23-24, 34-38, 65) Plaintiff drove to the gas station and saw Mr. Gomba's hydro seeder parked at the rear of the station, leaking a fluid onto the parking lot.  (*Id.* at 54, 58) The liquid spill had a big green spot on it and was running down the adjacent street.  (*Id.* at 59) Plaintiff observed two police cars parked at the station.  (Barton Deposition, at 60) Defendant Sagan exited his police car after plaintiff approached him while looking for Gomba's truck and began to question plaintiff about the spill.  (Plaintiff's Updated and Supplemented Responses to Defendants First Set of Interrogatories as of July 29, 2005 ("Plaintiff's Supplemental Responses"), attached to MSJ as Ex. B, at pp. 25-26; Barton Deposition, at 63-66, 77-78, 86)  Plaintiff told Sagan that she thought the hydro seeder contained water, mulch, and seed.  (Barton Deposition, at 86, 125) Sagan then questioned plaintiff about whether she

had an ownership interest in Mr. Gomba's landscaping business. (Barton Deposition, at 92-93; Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff responded in the negative. (*Id.* at 98) Plaintiff answered all of Sagan's questions and then stated that she was going home. (Plaintiff's Supplemental Response to Interrogatory No. 10) As she turned to walk toward her car, defendants Sagan and Vasconcellos went into the cashier's booth. (*Id.*)

Officer Blea, who had just arrived at the scene, confronted plaintiff as she walked to her car. (Plaintiff's Supplemental Response to Interrogatory No. 10) Blea questioned plaintiff about the spill and whether it contained anything hazardous, such as fertilizer. (*Id.*; Barton Deposition, at 100-101) Plaintiff responded that she did not know if the spill contained fertilizer. (Barton Deposition, at 101-102) Officer Blea expressed concern about the contents of the spill because it was running down the street adjacent to the gas station, into a residential area, and older children were riding their bicycles through it. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition, at 103-04) When Officer Blea asked plaintiff for her identification, she initially refused, stating "I don't have to give you any identification," then went to her car to retrieve her driver's license. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition at 106) After Officer Blea returned her license and didn't say anything further, plaintiff told him that she was leaving and walked towards her car. (Barton Deposition, at 109, 112) Plaintiff got into her car and started it, but it stalled.  (Barton Deposition, at 109, 112; Plaintiff's Supplemental Response to Interrogatory No. 10) Defendants Sagan and Vasconcellos then removed plaintiff from her vehicle, pulled her arms behind her back, applied

handcuffs, pulled plaintiff by the handcuffs to the patrol car, and placed her in the back seat. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition, at 115, 121, 131) Plaintiff testified in her deposition that the defendants' actions in pulling her by the handcuffs hurt her wrists, because she had broken her right wrist in 1999 and her left wrist in 2000,[5] and was in casts for several months. (Barton Deposition, at 120-21, 153-156; Plaintiff's Supplemental Response to Interrogatory No. 4) Plaintiff told the officers that she was recuperating from a broken wrist and asked them "not to do this." (Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff states that defendant Sagan told her, after placing her in the police car, that he was going to take her to jail if she didn't calm down, stop crying and tell them what they wanted to know. (Barton Deposition, at 134-135, 138)

Defendants removed plaintiff from the patrol car after approximately fifteen minutes and took off the handcuffs. (Barton Deposition, at 139) Plaintiff's wrists were "black and blue." (*Id.* at 140) The officers ordered her to sit on the curb for a while and to tell them "what they needed to know." (*Id.*, at 139) Eventually, the defendants told her she was free to leave and returned her car keys. (*Id.* at 139, 141) Plaintiff began walking towards her car when she was stopped by defendant Blea who asked to see her identification again. (*Id.* at 141-142; Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff showed Blea her recreation center identification, and he angrily demanded to see her driver's license. (Barton Deposition, at 142-43) Defendant Sagan took plaintiff's purse

---

[5]It is unclear from the record whether plaintiff broke her left wrist in 2000 or in 2002, after the events challenged here.

from her and Officers Sagan and Vasconcellos grabbed plaintiff's shoulders from behind and held her arms back for approximately one minute while defendant Blea searched the purse for plaintiff's driver's license.   (*Id.* at 143, 149-150; Plaintiff's Supplemental Response to Interrogatory No. 10)  Defendants then issued plaintiff a General Sessions Summons and Complaint for "Interference with Police Authority."  (Barton Deposition, at 164; Affidavit of Chris Ramsay, attached to MSJ) The court dismissed the charge prior to trial for lack of probable cause.  (Barton Deposition, at 164-65; Consolidated Compl., at ¶78)

Plaintiff does not have any permanent physical injuries as a result of defendants' use of force on February 24, 2002.  (Barton Deposition, at 164) Plaintiff states that her wrists were "black and blue" for a period of time, she had small lacerations on her wrists, and that her back and arms were sore for a period of time.  (Plaintiff's Supplemental Answer to Interrogatory No. 6)

Plaintiff asserts the following claims in her Consolidated Complaint and Jury Demand filed on March 15, 2004: (1) that defendants Sagan, Blea and Vasconcellos illegally arrested the plaintiff, illegally searched her purse, and used excessive force against her during the arrest and search, in violation of the Fourth Amendment to the United States Constitution; (2) that she was prosecuted maliciously for violating Section 38-31 of the Denver Revised Municipal Code, "Interference with Police Authority," based on false and misleading statements made by defendants Blea, Sagan and Vasconcellos and that defendant Wortham, the Denver City Attorney, defendant Sandoval, the Commander of District 4 of the Denver Police Department, and defendant Whitman, the

5

Denver Chief of Police, failed to dismiss the charge after it became obvious to them that the prosecution was baseless, in violation of the Fourth Amendment; (3) that defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey have established a municipal policy of covering up police misconduct by refusing to hold police officers responsible for illegal searches, seizures, and the use of excessive force, and, by maliciously prosecuting persons mistreated by police officers; (4) that defendant Wortham and defendant Ramsey, the Denver Assistant City Attorney, are liable under state law for maliciously prosecuting the plaintiff; (5) that the defendants' conduct, except for defendant Hickenlooper, in arresting, searching and "assaulting" the plaintiff and in prosecuting her without probable cause to believe that a crime had been committed, was extreme and outrageous, and constituted the intentional infliction of emotional distress; and (7) that plaintiff is entitled to an injunction to prevent the defendants from engaging in similar misconduct against other citizens in the future.

II.

Defendants have moved for summary judgment on the majority of plaintiff's claims, with the exception of plaintiff's §1983 Fourth Amendment claims of unlawful arrest and unlawful search against defendants Sagan, Blea and Vasconcellos, and plaintiff's state law outrageous conduct claim against those defendants.

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988).  To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial.  *Handy v. Price,*  996 F.2d at 1064, 1068 (10th Cir. 1993).

        The individual defendants have asserted the qualified immunity defense in response to plaintiff's constitutional claims against them in their individual capacities for monetary relief.  Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right.  *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted).  If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity.  *Smith*, 339 F.3d at 1211.

If the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir. 2001)(internal quotation omitted).

A law is "clearly established" for purposes of qualified immunity if there is a Supreme Court or Tenth Circuit decision on point, or if "the clearly established weight of authority from other circuits [has] found the law to be as the plaintiff maintains." *Johnson v. Martin*, 195 F.3d 1208, 1216 (10th Cir. 1999)(quoting *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999))(internal citation omitted). The clearly established law inquiry focuses on whether the public official should reasonably have known, in light of existing law, that his conduct was unlawful. *Johnson*, 195 F.3d at 1216; *accord Anderson v. Creighton*, 483 U.S. 635, 640 (1987)("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Saucier*, 533 U.S. at 202 (stating that for the law to be clearly established, it must "be clear to a reasonable [prison administrator] that his conduct was unlawful in the situation he confronted."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("the salient question . . . is whether the state of the law [at the relevant time] gave [defendants] fair warning that their alleged [conduct] was unconstitutional."

Plaintiff has not addressed the merits of defendants' arguments as raised in their motion for partial summary judgment. Instead, plaintiff objects to the court's consideration of the motion on the ground that the copy of plaintiff's deposition transcript attached to

defendants' motion is not admissible evidence because plaintiff had not reviewed or signed the deposition at the time the copy was filed with the court.

Importantly, although plaintiff complains that copies of her deposition transcript were filed with the court before she had an opportunity to review the transcript for accuracy, *see* Fed.R.Civ.P. 30(e), she does not claim that any of the testimony recorded was inaccurate, nor has plaintiff since advised the court of any inaccuracies. Accordingly, the court may rely on the copy of plaintiff's deposition transcript in considering defendants' motion for partial summary judgment.[6]

Even though plaintiff has declined to respond to the merits, I nonetheless must determine whether the evidence of record establishes that defendants are entitled to judgment as a matter of law on those of plaintiff's claims which defendants address in their motion. *See* Fed.R.Civ.P. 56(c); *Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir. 2002)(holding that *pro se* plaintiff's failure to file timely response to defendant's summary judgment motion constituted plaintiff's confession of facts asserted by defendant and properly supported in the summary judgment motion, but "did not relieve the court of its duty to make the specific determinations required by Fed.R.Civ.P. 56(c)")

III.

A.    Fourth Amendment Excessive Force Claim

Defendants move for summary judgment on plaintiff's claim that defendants Sagan, Blea and Vasconcellos used excessive force against her during two "arrests."

---

[6]Plaintiff also argues that defendants should have submitted the original deposition transcript to the court, instead of a copy. However, the original deposition transcript must remain in a sealed envelope for use at trial. *See* Fed.R.Civ.P. 30(f).

In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." The reasonableness of a particular use of force must be assessed based on the totality of the circumstances, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at  396.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citations and quotation marks omitted). In making an arrest, officers may "use some degree of physical coercion or threat thereof to effect it." *Id.*

Plaintiff claims that the defendant police officers used excessive force against her when she was twice "arrested" on February 24, 2002. The first alleged arrest  occurred when the defendant police officers removed plaintiff from her vehicle, handcuffed her, and placed her in the back of the patrol car.[7]  Plaintiff asserts that a second "arrest" occurred when police officers grabbed her shoulders from behind and restrained her while

_____

[7]The parties apparently agree, as does the undersigned, that defendants' conduct constituted a "seizure" of plaintiff, thereby triggering the protections of the Fourth Amendment.  A  "seizure" occurs when an officer's show of authority during a police-citizen encounter succeeds in restraining the citizen. *See Latta v. Keryte*, 118 F.3d 693, 698 (10th Cir. 1997)(internal citation omitted); *see, also, United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002) ("Ultimately, a seizure requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority")(citing *California v. Hodari D.,* 499 U.S. 621, 626 (1991)).

defendant Blea retrieved plaintiff's driver's license from inside her purse. (Barton Deposition, at 198-99)

The Tenth Circuit recognizes three types of police/citizen encounters: consensual encounters (which are not seizures within the meaning of the Fourth Amendment); investigative stops; and arrests. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). The nature of a police seizure is relevant to whether an officer's use of force against a citizen during the course of the seizure was lawful. "[P]olice have historically been able to use more force in making an arrest than in effecting an investigative detention." *Cortez v. McCauley*, 438 F.3d 980, 995 (10th Cir. 2006). Moreover, if an arrest or investigative detention was unlawful, a plaintiff may not recover separately on an excessive force claim. *Id.* at 996. This is so because "[a]ny force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful." *Id.* Accordingly, when an individual asserts an excessive force claim against police officers in connection with a "seizure," the court first must determine whether the seizure was a lawful arrest or lawful investigative detention; if lawful, the court may proceed to analyze the merits of the excessive force claim. Conversely, if the arrest or investigative detention was unlawful, the excessive force claim cannot be maintained as a separate claim for relief. *Id.*

The jury will decide whether the police seizures plaintiff challenges were lawful. I consider below  whether plaintiff's evidence is sufficient to try her excessive force claims to the jury, based on the potential outcomes of her unlawful seizure claim.

1.    Excessive force (first seizure) in context of an arrest

I first consider plaintiff's claim that she was "arrested" when defendants removed her from her vehicle, handcuffed her, and placed her in the back seat of a police car. Handcuffing an individual and placing her in a police car are indicative of an arrest. *See Cortez*, 438 F.3d at 989, 994-95 (citing cases).   An arrest must be supported by probable cause to comport with the Fourth Amendment. *See Michigan v. Summers*, 452 U.S. 692, 700 (1981).

Plaintiff testified in her deposition that the criminal citation she received for "Interference with Police Authority" was dismissed by the state court for lack of probable cause. (Barton Deposition, at 164-65)  There is no evidence in the court's summary record to the contrary.  Accordingly, if plaintiff succeeds at trial on her unlawful arrest claim, she cannot maintain a separate claim for unlawful excessive force based on the same facts. *Cortez*, 438 F.3d at 996.  However, in the event there is evidence presented at trial from which the jury could reasonably conclude that there was probable cause to arrest plaintiff, I consider whether defendants are entitled to qualified immunity on plaintiff's excessive force claim in the context of a lawful arrest.

As discussed previously, officers are entitled to use some degree of force in effecting an arrest supported by probable cause. *Graham*, 490 U.S. at 396.   Plaintiff states that defendants Sagan and Vasconcellos physically removed her from her vehicle, pulled both of her arms behind her and handcuffed her, that she told them "not to do this" because she was recuperating from a broken wrist, and that the defendants then "pulled [her] by the handcuffs" to the patrol car and "shoved" her into the back of the patrol car

12

where she "landed on [her] hands and injured [her] wrists." (Plaintiff's Supplemental Response to Interrogatory No. 10; *see*, *also*, Barton Deposition, at 120-121, 132-33) Defendants removed her from the police car after approximately fifteen minutes and released the handcuffs. (Barton Deposition, at 139)

Plaintiff suffered "black and blue wrists" for a period of time after the incident and had small lacerations on her wrists from the handcuffs. (Plaintiff's Supplemental Response to Interrogatory No. 6) Plaintiff's injuries, however, did not require medical attention. (Barton Deposition, at 157-161) Plaintiff further testified that the officers did not hurt her when they removed her from her vehicle.  (Barton Deposition, at 115)

Whether plaintiff suffered only minor injuries as a result of the defendants' use of force is not determinative.  A lack of a physical injury does not preclude an excessive force claim, *see Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001), but is instead one factor for the court to consider in the totality of the circumstances analysis. *Id.* and n.16.

In *Cortez*, police officers seized the male plaintiff in the entryway of his home, handcuffed him, and placed him in the back of a patrol car. 438 F.3d at 987.  Although the plaintiff advised the officers that the handcuffs were too tight and were causing him pain, the officers did not loosen the handcuffs.  *Id.*  The handcuffing left red marks on plaintiff's wrists that were visible for several days.  *Id.* at 997.   The Tenth Circuit concluded that because there was nothing  problematic about the manner in which plaintiff was handcuffed and placed in the police car, the mere application of tight handcuffs without resultant physical injury was insufficient to establish a constitutional violation.  *Id.* at 997-

98. The court thus held that if the male plaintiff was lawfully arrested, he had failed to submit sufficient evidence to show that the defendants' use of force against him was objectively unreasonable, in violation of the Fourth Amendment. *Id.* at 998.

Here, plaintiff's evidence does not demonstrate that defendants' use of force was substantial or abusive. Plaintiff does not complain about the manner in which she was removed from her vehicle, nor does she allege any other rough treatment at the hands of the defendants which is inconsistent with a standard handcuffing procedure and arrest. The crux of plaintiff's claim is that she told the officers not to handcuff her, and not to pull her by the handcuffs to the police car, because she had a prior wrist injury. Assuming that plaintiff was not attempting to flee, the handcuffing may be sufficient to support a claim of excessive force in the context of a lawful arrest, because there is no evidence that plaintiff posed a risk to officer safety. *See Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993)("An excessive use of force claim could be premised on [the officer's] handcuffing [the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him.") However, the police officers are nonetheless entitled to qualified immunity if their conduct did not violate clearly established law. *Saucier*, 533 U.S. at 201-202.

Neither the Supreme Court, nor the Tenth Circuit has held that a misdemeanor offender who does not resist or attempt to flee,[8] has a right not to be handcuffed in the course of an arrest. The Tenth Circuit has held, in the context of a substantive due

---

[8]Although it appears that there may be a dispute at trial about whether plaintiff was attempting to flee when the defendants handcuffed her, I construe the evidence in plaintiff's favor on summary judgment.

process analysis, that handcuffing an arrestee too tightly and causing pain, with no evidence of "contusions, lacerations, or damage to the bones or nerves of her wrists" did not constitute excessive force. *Hannula v. Lakewood*, 907 F.2d 129, 132 (10th Cir. 1990)(decided prior to *Graham*).[9]   Case law in other circuits is not consistent.   The Eleventh Circuit has held that the painful handcuffing of arrestees with resultant minor injuries does not constitute excessive force.   *Nolin v. Isbell*, 207 F.3d 1253, 1258 and n.4 (11th Cir. 2000)(holding that officer who, during the course of a lawful arrest, grabbed arrestee and shoved him a few feet against a vehicle, pushed his knee into the arrestee's back and the arrestee's head against the van, and placed arrestee in handcuffs, with resultant minor bruising that disappeared without treatment, was entitled to qualified immunity on excessive force claim).   Conversely, the Ninth Circuit has denied summary judgment to a police officer on an excessive force claim where the officer locked the handcuffs on the plaintiff's wrists so tightly that plaintiff suffered pain and bruises and officer refused, without justification, to loosen the handcuffs after plaintiff complained about pain. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). The Fifth and Eighth Circuits have held that painful handcuffing accompanied by de minimis injuries will not support an excessive force claim. *See Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001)(painful

---

[9]The Tenth Circuit has held in two unpublished dispositions that where force used by police officers in effecting a lawful arrest was not substantial or abusive, the force is not unlawful merely because the arrestee advises the police officer of a prior injury which may be exacerbated by the handcuffing. *See Wells v. State of Oklahoma ex rel. Dep't of Safety,* 97 F.3d 1465, 1996 WL 557722 (10th Cir. (Okla.) 1996)(Unpublished Disposition); *Morreale v. City of Cripple Creek*, 113 F.3d 1246 (Table)(10th Cir. (Colo.) 1997) (Unpublished Disposition). I cannot rely on unpublished Tenth Circuit decisions in the qualified immunity analysis, however. *See* 10th Cir. Rule 36.3 (stating that unpublished orders and judgments are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel).

Copies of the *Wells* and *Morreale* decisions are attached to the Recommendation.

handcuffing that resulted in swollen wrist); *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990)(holding that painful handcuffing without evidence of permanent resulting injury is insufficient to show excessive force).

Accordingly, even though there is authority from the Sixth and Ninth Circuits which supports plaintiff's claim here, other Circuit authority is to the contrary. Plaintiff thus cannot show that the "clearly established weight of authority from other circuits [has] found the law to be as the plaintiff maintains." *Johnson*, 195 F.3d at 1216.

I recommend finding that defendants are entitled to summary judgment on plaintiff's excessive force claim to the extent the use of force occurred during a lawful arrest.  Even if defendants provide evidence at trial from which the jury could find that plaintiff was lawfully arrested, plaintiff cannot succeed on her excessive force claim because existing law would not have placed the defendants on notice that their conduct was unreasonable under the circumstances. *Saucier*, 533  U.S. at 202.

I further recommend granting summary judgment to defendants on plaintiff's claim that excessive force was used against her in the course of an unlawful arrest because if plaintiff succeeds at trial on her unlawful arrest claim, she cannot maintain a separate claim for excessive force based on the same facts.  *Cortez*, 438 F.3d at 996.

2.      Excessive force (first seizure) in context of an investigatory detention

The record also contains evidence from which the jury could conclude that plaintiff was seized during the course of an investigative detention.

"A police officer who observes suspicious circumstances may stop an individual briefly to investigate the circumstances provoking suspicion." *Latta*, 118 F.3d at 698 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *Adams v. Williams*, 407 U.S. 143, 146 (1972)("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officers at the time"); *Michigan*, 452 U.S. at 699 (recognizing that "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity").

The record shows that the police officers were investigating the source and contents of a spill on the gas station property where they stopped plaintiff for questioning.  Because the jury could reasonably infer from the evidence of record that plaintiff's seizure was a lawful investigative detention, I consider first whether the force used by the defendant police officers was reasonable under the totality of the circumstances and second whether the defendants are entitled to qualified immunity.

Police officers may "`take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of a *Terry* stop.'" *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993)(quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).  An officer may grab a citizen by the arm when performing an investigative detention without running afoul of the Fourth Amendment.  *Terry*, 392 U.S. at 7.  In *Perdue*, the Tenth Circuit held that police may use handcuffs during a *Terry* stop

without elevating an investigatory stop into an arrest if the "circumstances reasonably indicate that the suspects are armed and dangerous." *Perdue*, 8 F.3d at 1463 (citing cases from other circuits upholding use of handcuffs where there is a risk to officer safety, or the individual has fled or has attempted to flee).

Here, plaintiff testified to the following relevant facts in her deposition: after plaintiff arrived at the gas station and began looking around for Mr. Gomba's truck, defendant Sagan questioned her about the contents of the spill and asked whether plaintiff had an ownership interest in Mr. Gomba's landscaping company.  When Sagan asked plaintiff about Mr. Gomba's whereabouts at that time, plaintiff responded that she didn't know where Gomba was, but that he would return to the gas station because the hydro seeder was "an expensive piece of equipment." Sagan then asked plaintiff for Gomba's telephone number and she responded that Gomba's personal and business phone number was printed on the front of the hyrdro seeder.  At some point, plaintiff told Sagan that she had given him all the information she had and that she was leaving.  As plaintiff began walking to her car, she was confronted by Officer Blea, who had just arrived at the scene.  Blea then questioned plaintiff about the contents of the spill and asked her who was responsible.  Blea also asked plaintiff for her identification.  Plaintiff initially refused, but then retrieved her driver's license from her vehicle and handed it to Blea.  After Blea returned the license to plaintiff and did not say anything further, plaintiff told Blea that she was leaving and walked to her car.  Plaintiff got into her car and started it, but it stalled.  Officers Sagan and Vasconcellos then removed plaintiff from her car, handcuffed her, placed her in the back of a police car for about fifteen minutes, and told her that they would

take her to jail if she didn't stop crying.  (Barton Deposition, at 91-115; 120-21,130-134, 139)  Plaintiff also testified that she did not try to slam her car door repeatedly on Officer Blea's legs, as stated in the police report.  (Barton Deposition, at 116-17)

The defendant police officers did not submit affidavits in support of their summary judgment motion, nor did they submit the police reports.  There is no evidence in the record that any of the officers ordered plaintiff to "stop" as she walked towards her car, or told her specifically that she was not free to leave.   The record also lacks any evidence that plaintiff posed a threat to the police officers or others.

I recommend finding that genuine issues of material fact exist about whether defendants' actions in removing plaintiff from her car, handcuffing her, and placing her in the back of a police car constituted an unreasonable use of force in the context of a possibly lawful investigative detention. A reasonable fact finder could conclude from plaintiff's evidence that the officers' actions were unreasonable because plaintiff did not attempt to flee, nor did she pose an immediate threat to the safety of the officers or others. *See Cortez*, 438 F.3d at 999-1000 (affirming trial court's order denying summary judgment and qualified immunity to police officers on the male plaintiff's claim that officers' actions in handcuffing plaintiff and placing him in police car during the course of a lawful investigatory detention constituted excessive force where there was no evidence in record that plaintiff posed an immediate threat to the safety of the officers or others, or that plaintiff attempted to flee).  I further recommend finding that the defendant police officers are not entitled to qualified immunity at this time because the right to be free from excessive force during an investigative detention was clearly established in *Perdue* and

*Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1031-32 (10th Cir. 1997)(holding that officers may take actions reasonable necessary to protect their personal safety and to maintain the status quo during the course of a *Terry* stop without converting an investigatory stop into an arrest that must be justified by probable cause)(citing *Perdue*)). *See Cortez*, 438 F.3d at 1000.

I recommend denying defendants' motion for summary judgment on plaintiff's claim that the police officer defendants used excessive force against her when they physically removed her from her vehicle, handcuffed her, and placed her in a patrol car, to the extent the challenged use of force occurred during a lawful investigatory detention. I further recommend finding that the defendants are entitled to summary judgment on plaintiff's excessive force claim to the extent the claim is predicated on an unlawful investigatory detention. *See Cortez*, 438 F.3d at 996.

3.    Excessive force during the second "seizure"

Plaintiff also claims that she was "arrested" when two of the defendant police officers grabbed her shoulders from behind and held her arms back, thereby restraining plaintiff for a minute or so while defendant Blea searched plaintiff's purse for her driver's license. The police conduct plaintiff describes constitutes a "seizure," *see Terry*, 392 U.S. at 19, but is not characteristic of an "arrest" because plaintiff was not handcuffed and placed in a police car, or transported involuntarily to the police station. See *Cortez,* 438 F.3d at 989, 994-95 (citing cases).

A reasonable jury could conclude that the second seizure of plaintiff was part of a lawful investigatory detention.  A police officer may grab an individual's arm during the course of a lawful investigatory stop without elevating a *Terry* stop to an arrest that must be justified by probable cause.  *Terry*, 392 U.S. at 7, 28.  However, even if the force used against plaintiff was unreasonable, defendants are entitled to qualified immunity because the law at that time would not have placed defendants on notice that their actions in grabbing plaintiff's arms and restraining them behind her back for one minute were unlawful.  *See Cortez*, 438 F.3d 980, at 1001 (holding that even if police officers used excessive force against female plaintiff during the course of a lawful investigatory detention when officer entered her home in the middle of the night, seized her by the arm and physically escorted her to the patrol car where she was questioned, defendants were entitled to qualified immunity because the law in effect in May 2001 did not place the officers on notice that their conduct was clearly unlawful)(citing *Saucier*, 533 U.S. at 202).

Accordingly, defendants' motion for summary judgment on the basis of qualified immunity should be granted on plaintiff's claim of excessive force arising from the actions of physically restraining plaintiff's arms  while defendant Blea searched plaintiff's purse for her driver's license.  If defendants' use of force occurred during a lawful investigatory stop or arrest,[10] it did not violate clearly established law and the defendants are entitled to qualified immunity.  If the use of force occurred during an unlawful investigatory stop or

---

[10]Even if the second "seizure" of plaintiff could be construed as akin to an "arrest," the defendants are entitled to qualified immunity because a greater use of force is justified in effecting an arrest supported by probable cause than in making a *Terry* stop.  *Cortez*, 438 U.S. 980, 995.

arrest, plaintiff cannot maintain a separate claim for relief for excessive force.  *Cortez*, 438 F.3d 980, 996.

B.     §1983 Malicious Prosecution Claim

Defendants move for summary judgment on the entirety of plaintiff's malicious prosecution claim under 42 U.S.C. §1983.

Plaintiff claims that she was prosecuted maliciously for violating Section 38-31 of the Denver Revised Municipal Code, "Interference with Police Authority," based on false and misleading statements made by the defendant police officers and that defendant Wortham, the Denver City Attorney, defendant Sandoval, the Commander of District 4 of the Denver Police Department, and defendant Whitman, the Denver Chief of Police, failed to dismiss the charge after it became obvious to them that there was no basis for it, in violation of her Fourth Amendment rights.

"[S]tate law provides the starting point for analyzing a Fourth Amendment claim for malicious prosecution under §1983." *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001)(citing  *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996)).  However, the plaintiff must ultimately show that her Fourth Amendment right to be free from an unreasonable seizure has been violated. *Taylor*, 82 F.3d at 1561; *Wolford v. Lasater*, 78 F.3d 484, 489-90 (10th Cir. 1996)(citing *Albright v. Oliver*, 510 U.S. 266 (1994)(holding that malicious criminal prosecution, if actionable in constitutional law, is governed by the Fourth Amendment rather than the Fourteenth Amendment Substantive Due Process Clause)).

The lawfulness of defendants' seizures of plaintiff on February 24, 2002 will be decided at trial. Assuming that plaintiff can prove a violation of her Fourth Amendment rights, I address whether the evidence in the summary judgment record is sufficient to satisfy plaintiff's burden on the other elements of her §1983 malicious prosecution claim.

In Colorado, the elements of a malicious prosecution claim are that: (1) A criminal case was brought against the plaintiff; (2) the criminal case was brought as a result of a written statement made by the defendant; (3) the criminal case ended in favor of the plaintiff; (4) the defendant's statement against the plaintiff was made without probable cause; (5) the defendant's statement against the plaintiff was motivated by malice towards the plaintiff; and (6) as a result of the criminal case, the plaintiff had damages. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004)(citing CO-JICIV 17:1 (4th ed)); *Montgomery Ward & Co. v. Pherson*, 272 P.3d 643 (Colo. 1954).

I first address plaintiff's claim against defendants Blea, Sagan and Vasconcellos. Generally, a police officer cannot be sued for malicious prosecution under §1983 because the "chain of causation is broken" between the arrest and the actual prosecution. *Taylor*, 82 F.3d at 1564 (quoting and citing *Reed v. City of Chicago*, 77 F.3d 1049, 1054 (7th Cir. 1996)) However, officers may be held liable if they conceal and misrepresent material facts to the District Attorney. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004); *Taylor*, 82 F.3d at 1563-64 (citing *Reed*, 77 F.3d at 1054).

Plaintiff avers that Officers Blea and Sagan made the following statements on her criminal citation which were false or misleading: that "unknown" suspects had dumped "10,000 gallons of an unknown green Fiberglass substance;" their description of the spill

23

from the hydro seeder as "10,000 gallons of unknown fiberglass substance"; that when Blea asked plaintiff for her identification, plaintiff responded that she did not "have to give him anything and attempted to enter a vehicle to leave;" that plaintiff attempted to slam her car door on Officer Blea repeatedly; that plaintiff began screaming and refused to provide identification; that after plaintiff was handcuffed, she "continued to pull away from police yelling." (Plaintiff's Supplemental Answer to Interrogatory No. 11; Barton Deposition, at 202, 210-215)

The probable cause statement on the copy of the General Sessions Summons and Complaint issued to plaintiff for "Interference with Police Authority" contained in the court's record is not legible.  Moreover, the officer's handwritten notes which plaintiff states were on the back of the citation are not part of the court's record. Defendants do not dispute plaintiff's deposition testimony about the content of defendants Blea and Sagan's written statements in support of the criminal citation.  Accordingly, for purposes of summary judgment, I assume that plaintiff's representations about Officers Blea's and Sagan's written statements are accurate.

With regard to the first two allegedly false statements, plaintiff states that she told the officers that the hyrdo seeder belonged to her "husband" or "ex-husband," but it is not clear that she gave the officers his name.  Plaintiff also testified in her deposition that she told the officers what she thought was contained in the spilled substance, but admitted that she did not know for certain. Accordingly, defendant Blea's statement that the suspect was "unknown" and his description of the substance as "an unknown fiberglass substance," which was admittedly based on his observations and lack of definite knowledge about the

24

actual contents, cannot be deemed false or misleading statements.  However, Blea and Sagan's remaining statements, if false or misleading, as the plaintiff avers in her deposition testimony and in her supplemental responses to defendants' interrogatories, are material to the citation for "Interference with Police Authority."   Accordingly, I recommend finding that genuine issues of material fact remain about the veracity of Officers Blea's and Sagan's written statements.

I recommend finding that plaintiff has satisfied the first two elements of malicious prosecution under Colorado law because the record shows that a criminal case was filed against her based on the written statements of Blea and Sagan.  (Affidavit of Chris Ramsay, attached to MSJ, at ¶3) Plaintiff has also satisfied the third and fourth elements based on her uncontroverted deposition testimony that the court dismissed the criminal complaint for lack of probable cause.

I next consider whether there is evidence in record tending to show that the defendants acted with malice in prosecuting the plaintiff.[11]  Under Colorado law, "`malice' is any motive other than a desire to bring an offender to justice," and "may be inferred from a want of probable cause." *Pherson,* 272 P.2d at 646.

In support of her allegation that defendants acted with malice, plaintiff avers that the officers continued to contend that the spill contained a hazardous substance, even though plaintiff had already told them that the contents were harmless; that even though plaintiff

_____

[11]The Tenth Circuit has not squarely addressed whether malice is an element of a §1983 malicious prosecution claim.  See *Pierce*, 359 F.3d at 1297 n.12.  The parties assume that proof of malice is necessary to sustain plaintiff's §1983 claim, so I will do the same for purposes of this Recommendation.

answered all the officers' questions, defendant Sagan continued to insist that she tell them what they wanted to know; that after defendants handcuffed plaintiff and she began to cry, defendant Sagan threatened to put her in jail if she didn't stop crying; and, that defendant Sagan cited plaintiff for police interference after she threatened to sue the police officers.[12] (Plaintiff's Supplemental Response to Interrogatory No. 12; Barton Deposition, at 138-142)

Even if plaintiff's facts may be insufficient to prove malice, I recommend finding that the issue of malice is for the jury to decide.  *See Pherson*, 272 P.2d at 646 (recognizing that malice can be inferred from a lack of probable cause).

Finally, plaintiff has stated facts to show that she incurred damages as a result of the prosecution. (Plaintiff's Supplemental Response to Interrogatory No. 13)

Accordingly, I recommend finding that genuine issues of material fact preclude the entry of summary judgment in defendants' favor on plaintiff's §1983 malicious prosecution claim against defendants Blea and Sagan.  Those defendants are not entitled to qualified immunity because, in *Taylor v. Meachum*, the law was clearly established that a police officer who makes false statements in a police report may be held liable in a §1983 malicious prosecution action. *See*, *also*, *Robinson v. Maruffi*, 895 F.2d 649, 655-56 (10th Cir. 1990)(holding that defendant police officers could be held liable for malicious

_____

[12]Plaintiff also states that defendants' malice is evidenced by the fact that defendants cited her for  interference with police authority even though they knew that Mr. Gomba would come back to the station to clean up the spill, based on Gomba's statements to one of the gas station employees. (Plaintiff's Supplemental Response to Interrogatory No. 12) However, plaintiff's statement about what Gomba told a gas station employee is hearsay and is therefore not competent evidence in a summary judgment proceeding.  *See Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005)("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.")

prosecution where they "purposefully concealed and misrepresented material facts to the district attorney which may have influenced his decision to prosecute").

I further recommend, however, that summary judgment be entered in favor of defendant Officer Vasconcellos because there is no evidence in the record that he made any false statements in support of the criminal citation issued to plaintiff.[13] (*See* Barton Deposition, at 201)

Defendants next argue that defendant Denver City Attorney Wortham is entitled to prosecutorial immunity for his actions in prosecuting the municipal violation charge.

A government prosecutor enjoys absolute immunity from damages under §1983 when he "initiat[es] a prosecution and . . . present[s] the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976); *see, also, Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.") Plaintiff's §1983 malicious prosecution claim against defendant Wortham in his individual capacity should be dismissed because he is immune from damages liability under §1983.[14]

---

[13]Plaintiff also states that two of the officers testified at the preliminary hearing that she was an accessory to a crime of dumping phosphoric acid and that she was charged with that crime on the back of the Complaint issued to Mr. Gomba for "unlawful dumping." (Barton Deposition, at 189; Plaintiff's Supplemental Response to Interrogatory No. 10; General Session Summons and Complaint attached to MSJ) However, there is no evidence that plaintiff was ever prosecuted on a charge of conspiring to cover up a phosphoric acid spill. Accordingly, I do not consider that allegation in making a recommendation on plaintiff's §1983 malicious prosecution claim.

[14]Although plaintiff did not assert her §1983 malicious prosecution claim against defendant Ramsey, the Denver Assistant City Attorney, he is also entitled to prosecutorial immunity for prosecuting the criminal citation against plaintiff.

Defendants next argue that the §1983 malicious prosecution claim against defendants Whitman, the Denver Chief of Police, and Sandoval, the Commander of District 4, should be dismissed because plaintiff has not proffered any evidence to show that those defendants personally participated in the prosecution of plaintiff on the police interference charge.

Individual liability under 42 U.S.C. §1983 must be based on the individual's personal participation in the alleged constitutional deprivation. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). To hold a supervisor of a tortfeasor liable under §1983, the plaintiff must show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's `personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)(quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)(internal citation omitted)); *see, also, Harrington*, 268 F.3d at 1187 (citing *Meade*).

An individual "who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Pierce,* 359 F.3d at 1292 (quoting *Restatement (Second) of Torts* §655 (1977)). Plaintiff does not have any evidence that Commander Sandoval or police chief Whitman somehow assisted in the prosecution of the criminal citation. (Barton Deposition, at 216) Commander Sandoval did not know about the charge against plaintiff until after it was dismissed. (Barton Deposition, at 175) Plaintiff's claim against defendant Whitman is based on Whitman's refusal to

28

discipline the defendant police officers after plaintiff filed a complaint with Internal Affairs. (*Id.* at 217-218)  Plaintiff's evidence is insufficient to support a fact finder's reasonable inference that defendants Sandoval and Whitman personally participated in the alleged malicious prosecution.   Accordingly, the claim against those defendants should be dismissed.

C.      §1983 Claim Against the City and County of Denver for Unconstitutional Policies

Plaintiff claims that defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey have established a municipal policy of covering up police misconduct by refusing to hold police officers responsible for illegal searches, seizures and the use of excessive force, and, by maliciously prosecuting persons mistreated by police officers.

Plaintiff's claim against the defendants in their official capacities as the alleged final policy-makers for the City and County of Denver ("Denver") with regard to the alleged unconstitutional policies is treated as a claim against Denver.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985)(stating that an official capacity suit is "another way of pleading an action against an entity of which an officer is an agent"); *Myers v. Okla. Cnty Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998).  Because Denver is a named defendant, the official capacity claims against the individual defendants are duplicative and should be dismissed.

Denver cannot be held liable in a §1983 action unless a municipal custom or policy was the "moving force" behind a constitutional deprivation.  *Myers*, 151 F.3d at  1316 (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)); *Board of County*

*Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997). Alternatively, Denver may be held liable for the actions or decisions of a city official who has final policy making authority for Denver with respect to the challenged action. *See Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986)). Accordingly, to sustain her claim against Denver, plaintiff must proffer evidence to show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Camfield*, 248 F.3d at 1229 (internal quotation marks omitted).

According to plaintiff, Denver's unconstitutional policy of covering up police officers' illegal searches and seizures and their unlawful use of excessive force is evidenced by the following: the Denver Police Department Office of Internal Affairs' disposition of the complaint plaintiff filed about the objectionable conduct of defendant police officers Blea, Sagan and Vasconcellos which is the subject of the instant action; newspaper articles plaintiff has read about other individuals who have alleged police misconduct; and her own conjecture. (*See, generally*, Barton Deposition, at 192-194; Plaintiff's Supplemental Responses to Interrogatory Nos. 14 and 15)   Plaintiff's evidence is inadequate to show the existence of a Denver policy to cover up police officer misconduct which allegedly violates citizens' Fourth Amendment rights.   Moreover, assuming that defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey were final policy makers for Denver with regard to the alleged policy, there is no evidence in the record tending to show that those defendants authorized or acquiesced in the defendant police officers'

decision to engage in the conduct that allegedly violated plaintiff's Fourth Amendment rights.  Instead, plaintiff relies on evidence that defendants learned about the incident after-the-fact and argues that defendants are liable for failing to take appropriate remedial action.  To hold a supervisor liable under §1983, however, plaintiff must point to evidence that the supervisor participated in the constitutional violation at the time it occurred; that the supervisor knew about and acquiesced in the constitutional violation at the time it occurred; or, that the supervisor's failure to supervise caused the constitutional violation. *See Harrington*, 268 F.3d at 1187 (citing cases).  The record is devoid of any such evidence.

Plaintiff's claim that Denver had an unlawful policy of maliciously prosecuting persons mistreated by police officers should also be dismissed.  Although the undersigned has recommended a finding that defendants' motion for summary judgment on plaintiff's §1983 malicious prosecution claim be denied as to defendants Blea and Sagan, there is no evidence that those defendants acted pursuant to a municipal policy or that their conduct was directed or authorized by an individual with final policy-making authority for Denver.

Accordingly, defendants are entitled to summary judgment on plaintiff's claim against the City and County of Denver for promulgating and implementing unconstitutional policies or customs of violating citizens' Fourth Amendment rights.

31

D.   Malicious Prosecution under State Law

Defendants next move for summary judgment on plaintiff's claim that defendants Wortham and Ramsey, the Denver City Attorney and Assistant City Attorney, respectively, are liable under state law for maliciously prosecuting the plaintiff.

Under Colorado law, prosecuting attorneys are immune from liability in a civil action for malicious prosecution where they act within the scope of their prosecutorial duties, even when the prosecution is malicious and lacks probable cause. *McDonald v. Lakewood Country Club*, 461 P.2d 437 (Colo. 1969); *Stepanek v. Delta County*, 940 P.2d 364, 368 (Colo. 1997).

Defendants' motion for summary judgment on plaintiffs' state law malicious prosecution claim against Wortham and Ramsey should be granted.

E.   Outrageous Conduct

Defendants move for summary judgment on plaintiff's state law outrageous conduct claim against all of the individual defendants except for defendants Blea, Sagan and Vasconcellos.

Plaintiff alleges in her complaint that the defendants' conduct, other than defendant Hickenlooper, "in arresting, searching and assaulting the plaintiff, a 68 year old woman who was obviously terrified and not connected to any crime, and persisting in her prosecution without probable cause, knowing that no crime had been committed, thereby engaged in extreme and outrageous conduct."  (Consolidated Compl., at ¶100)

To prove a claim of outrageous conduct/intentional infliction of emotional distress, the defendants' actions must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)(citing the *Restatement (Second) of Torts* §46 (1965)).  The objectionable conduct must be such that an average member of the community would exclaim, "Outrageous!" *Id.*

I have recommended previously that plaintiff's §1983 malicious prosecution claim against defendants Whitman and Sandoval be dismissed because there is no evidence in the record that those defendants personally participated in prosecuting plaintiff on the charge of "Interference with Police Authority."   Further, the record is devoid of any evidence that would support a finding that defendant Webb personally participated in the prosecution of plaintiff, or that Webb, Whitman or Sandoval were involved in the alleged illegal search and seizures or in the alleged use of excessive force against plaintiff on February 24, 2002.   Accordingly, summary judgment should be granted in favor of defendants Whitman, Sandoval and Webb on plaintiff's outrageous conduct/intentional infliction of emotional distress claim.

Defendant Denver prosecutors Wortham and Ramsey are also entitled to summary judgment on plaintiff's outrageous conduct claim because they are absolutely immune from liability for their prosecutorial acts.

F.   <u>Injunctive Relief</u>

Defendants argue that plaintiff's request for injunctive relief should be dismissed because plaintiff stated in her deposition that she was not seeking an injunction against any of the defendants.   Because plaintiff concedes that she is not interested in obtaining an injunction to prevent any further alleged misconduct by the defendants, *see* Barton Deposition, at 240, I recommend that her request for injunctive relief be dismissed.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Defendants' Motion for Partial Summary Judgment [filed August 15, 2005] be **GRANTED in substantial part and DENIED in part** as follows:

Plaintiff's §1983 excessive force claims against defendants Sagan, Blea and Vasconcellos should be **DISMISSED**, except the claim of excessive force arising from the first seizure on February 24, 2002, and predicated on the jury's determination that the seizure occurred during the course of a lawful investigatory stop; plaintiff's §1983 and state law malicious prosecution claims against defendants Vasconcellos, Whitman, Sandoval, Webb, Hickenlooper, Wortham and Ramsey should be **DISMISSED**; plaintiff's claim against the City and County of Denver should be **DISMISSED**; plaintiff's state law outrageous conduct/intentional infliction of emotional distress claim should be dismissed against defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey; and, plaintiff's request for injunctive relief should be **DISMISSED.**  Summary judgment should

be denied on plaintiff's §1983 malicious prosecution claim against defendants Blea and Sagan.   It is

**FURTHER RECOMMENDED** that defendants Ramsey, Wortham, Webb, Hickenlooper, Sandoval, Whitman, the City and County of Denver, and the claims against defendants Blea, Sagan and Vasconcellos in their official capacities, be **DISMISSED.**

**The claims remaining, if this Recommendation is adopted, are:** Plaintiff's §1983 Fourth Amendment unlawful search and seizure claims; §1983 Fourth Amendment excessive force claim against Blea, Sagan and Vasconcellos, arising from the first seizure on February 24, 2002 and predicated on the jury's determination that the seizure occurred during the course of a lawful investigatory stop; §1983 malicious prosecution claim against Blea and Sagan; and, state law outrageous conduct claim against Blea, Sagan and Vasconcellos.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated March 21, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge