IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 03-cv-02633-PSF-PAC
(Consolidated with 04-cv-00319-PSF-PAC)

LILLIAN BARTON,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
OFFICER R. BLEA, Badge No. 99006,
OFFICER N. SAGEN, Badge No.96-021,
OFFICER JOHN DOE,
MAYOR JOHN HICKENLOOPER,in his Official capacity,
WELLINGTON WEBB, as former Mayor, in his Official capacity only,
GERALD R. WHITMAN, in his Official capacity as Chief of Police,
City and County of Denver,
J. WALLACE WORTHAM, JR., former Denver City Attorney,
in his Official capacity, and
CHRIS RAMSEY, former Denver Deputy City Attorney, in his Official capacity only,

      Defendants.

_____

Civil Action No. 04-cv-00319-PSF-PAC
(Consolidated with 03-cv-02633-PSF-PAC)

CITY AND COUNTY OF DENVER;
RICHARD BLEA;
NICK SAGAN;
JOSH VASCONCELLOS;
MAYOR JOHN HICKENLOOPER;
WELLINGTON WEBB;
GERALD R. WHITMAN;
RUDY SANDOVAL;
J. WALLACE WORTHAM, JR; and
CHRIS RAMSEY,

      Defendants.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE
## DATED MARCH 21, 2006.

This matter comes before the Court on the Recommendation of the Magistrate Judge filed March 21, 2006 (Dkt. # 208), defendants' Objection thereto filed April 4, 2006 (Dkt. # 210), plaintiff's Initial Objection thereto filed April 4, 2006 (Dkt. # 211), her Second Objection filed April 10, 2006 (Dkt. # 215), and defendants' Response to Plaintiff's Objections (Dkt. # 220) filed May 5, 2006.  The matter is ripe for determination.

The Magistrate Judge recommended granting in part and denying in part the defendants' Motion for Partial Summary Judgment filed August 15, 2005 (Dkt. # 144). In order to set forth the import of the Magistrate Judge's Recommendation, it is necessary to first set forth the plaintiff's claims, all of which arise out of an incident that occurred on February 24, 2002, when plaintiff was detained by Defendant Denver Police Officers Sagan, Blea and Vasconcellos ("defendant officers").  Plaintiff was subsequently charged by the Denver City Attorney with violation of a municipal code provision prohibiting interference with police authority, but the prosecution was dismissed prior to trial for lack of probable cause.  The details of the incident and the subsequent events are set forth in the Recommendation of the Magistrate Judge and need not be repeated here.

A.     **PLAINTIFF'S CLAIMS AND DEFENDANTS' MOTION**

Plaintiff originally filed her complaint in Civil Action No. 03-F-2633 (now 03-cv-2633-PSF-PAC) on December 26, 2003, which defendants answered on February 9, 2004.  On February 20, 2004, plaintiff filed a motion seeking leave to file a First Amended Complaint requesting to add parties and to recast her claims for relief, but before that motion was ruled on plaintiff filed her complaint in Civil Action No. 04-F-0319 (now 04-cv-319-PSF-PAC) on February 23, 2004, which was essentially the same as the pending proposed amended complaint.  By Order of this Court entered on March 8, 2004, the two cases were consolidated.  Thus the complaint in Civil Action No. 04-F-0319 became the operative complaint.  The Court notes that at the time these pleadings were filed plaintiff was represented by counsel.

The complaint in Civil Action No. 04-F-319 contains six claims for relief. Plaintiff's First Claim for Relief alleges that Defendants Sagan, Blea and Vasconcellos, in violation of 42 U.S.C. § 1983, violated plaintiff's constitutional rights to be free from an unlawful arrest, unlawful search and the use of excessive force.  The Second Claim for Relief avers that Defendants Sagan, Blea and Vasconcellos, together with Defendants Wortham, Sandoval and Whitman, in violation of 42 U.S.C. § 1983, assisted in a malicious prosecution of the plaintiff following the incident of February 24, 2002.  The Third Claim for Relief asserts that Defendants Wortham, Sandoval and Whitman, together with Defendants Webb, Ramsey and Hickenlooper, in violation of 42 U.S.C. § 1983, violated plaintiff's constitutional and civil rights by condoning "a policy of covering up misconduct by police officers through the malicious prosecution of persons

mistreated by police officers as well as through other means." Complaint at ¶ 84. The

Fourth Claim for Relief alleges common law malicious prosecution, apparently by

Defendants Wortham and Ramsey only. The Fifth Claim for Relief contends that the

conduct of all defendants (other than Hickenlooper) constitutes the torts of intentional

infliction of emotional distress and outrageous conduct. The Sixth Claim for Relief

seeks an injunction against Defendants Hickenlooper, Webb, Whitman, Sandoval,

Wortham and Ramsey from continuing to enforce the asserted policy of covering up

police misconduct.

The Defendants' Motion for Partial Summary Judgment seeks dismissal of all of

the claims filed by the plaintiff, with the exception of that portion of her First Claim for

Relief to the extent it alleges that plaintiff was unlawfully arrested and searched by

Defendants Sagan, Blea and Vasconcellos in connection with the incident that occurred

on February 24, 2002, and that portion of her Fifth Claim for Relief to the extent it

alleges that such conduct by these three defendants constitutes outrageous conduct

(Defendants' Motion for Partial Summary Judgment at 2-3).

## B.    THE MAGISTRATE'S RECOMMENDATION

In a detailed 36-page Recommendation, the Magistrate Judge carefully analyzed

the applicable law and the facts pertaining to each of plaintiff's six claims for relief. In

order to address the parties' respective objections to the Recommendation, a summary

of the Magistrate Judge's conclusions and analysis as to each claim is set forth below.

1. Plaintiff's First Claim for Relief

To the extent plaintiff's First Claim for Relief alleges the unlawful use of excessive force by Defendants Sagan, Blea and Vasconcellos, the part of that claim as to which defendants request summary judgment, the Magistrate Judge first noted that the standard for determining whether excessive force was employed differs depending on whether the incident at issue is deemed an "arrest" or "investigative stop" as police may be able to use more force in making an arrest than in effecting an investigative stop, citing to *Cortez v. McCauley*, 438 F.3d 980, 995 (10th Cir. 2006).[1] As the circuit panel also explained in *Cortez*, an arrest is "unreasonable" under the Fourth Amendment if it is not supported by "probable cause" to believe an offense was being or was about to be committed.  An unreasonable investigative stop occurs when the investigative detention is "not supported by reasonable suspicion." *Id.* at 989.

The Magistrate Judge found that there were actually two separate arguable seizures of plaintiff that occurred on February 24, 2002, the first involving plaintiff being removed from her vehicle, handcuffed, placed in the back of a patrol car and later released (described in the Recommendation as the "first arrest") and a second incident later when plaintiff, after being released from the patrol car, was grabbed by her shoulders from behind and restrained while Officer Blea retrieved plaintiff's driver's license from her purse (described in the Recommendation as the "second arrest").

---

[1]   The Court notes that while the Magistrate Judge relied substantially on the decision in *Cortez v. McCauley, supra*, the parties did not have the benefit of that decision at the time they briefed the Defendants' Motion for Partial Summary Judgment as it was issued on February 10, 2006.

(Recommendation at 10-11).  Although the Magistrate Judge and the parties all agree that both of these incidents are properly described as "seizures" within the meaning of the Fourth Amendment, the parties apparently do not agree whether they should be treated as "arrests" or "investigative stops."

As the Magistrate Judge further noted, the *Cortez* case also holds that if the arrest or investigative stop (seizure) is ultimately determined to be unlawful, that is, it is not supported by probable cause in the case of an arrest or reasonable suspicion in the case of an investigative stop, the plaintiff may **not** recover separately on a claim for excessive force (*id.*).  This is because "[a]ny force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful." *Id.* at 996. "Therefore, when an excessive force claim rests solely on an allegation that the force was excessive because the underlying seizure itself was unlawful" a jury cannot be permitted to award damages on both the claim for unlawful seizure and the claim for excessive force in effecting the seizure. *Id.* Thus the Magistrate Judge correctly recognized that under such circumstances, plaintiff's excessive force claim is subject to the entry of summary judgment if the arrest or investigative detention that occurred on February 24, 2002 is found to be unlawful (Recommendation at 11-12).[2]

On the other hand, as the Magistrate Judge correctly found, if the seizure of plaintiff that occurred on February 24, 2002 is found to be lawful, the question remains

---

[2]   Here, because Defendants' Motion for Partial Summary Judgment does not challenge that part of the plaintiff's First Claim for Relief asserting an unlawful seizure of plaintiff, the merits of that claim were not before the Magistrate Judge, nor are they presently before the Court, but rather are reserved for the jury trial set for June 19, 2006.

whether the amount of force used was reasonable in light of the "totality of the circumstances" as explained in *Graham v. Connor*, 490 U.S. 386, 395-96 (1989) (holding that proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

The Magistrate Judge here found that if the first seizure of plaintiff, as described above, is deemed to be an "arrest," the amount of force used by Defendants Sagan, Blea and Vasconcellos was not excessive based on her very detailed analysis of decided cases addressing excessive force claims in the context of an arrest (Recommendation at 12-16). Thus, the Magistrate Judge recommended granting these defendants' motion for summary judgment as to the excessive force claim, even if the evidence at trial showed the arrest was lawful, because the defendants are entitled to qualified immunity as the existing law would not have put defendants on notice that their conduct in effecting an arrest of plaintiff was unreasonable under the circumstances (*id.* at 16). In summary, the Magistrate Judge recommended that summary judgment be granted for the defendants on the excessive force claim insofar as it relates to the "first arrest" of plaintiff, if in fact that incident is found to be an arrest, whether the arrest is found to be unlawful or lawful.

Yet, the Magistrate Judge also found that with respect to the first seizure that a "jury could conclude that plaintiff was seized during the course of an investigative

detention," as opposed to an arrest (*id.* at 16).  As discussed above the standard for reasonable conduct may differ in the context of an investigatory stop.  Here, the Magistrate Judge found that there were disputed issues of material fact about whether the defendants' action in removing plaintiff from her car, handcuffing her and placing her in the patrol car, "constituted an unreasonable use of force in the context of a possibly lawful investigative detention."  (*Id.* at 19).  Thus, the Magistrate Judge recommended denying these defendants' motion for summary judgment as to the excessive force claim, "to the extent the challenged use of force occurred during a lawful investigatory detention."  (*Id.* at 20).

The Magistrate Judge further found that the second seizure of plaintiff on February 24, 2002 did not have the characteristics of an arrest, and that a reasonable jury could conclude it "was part of a lawful investigatory detention."  (*Id.* at  20-21).  Nonetheless, the Magistrate Judge found that the alleged use of force incident to that investigation, namely the restraining of plaintiff's arms while Defendant Blea searched plaintiff's purse, could not have been known by defendants to be a clear violation of established law based on the cited case law, and therefore found that defendants were entitled to qualified immunity and summary judgment in their favor (*id.* at 21).

Ultimately, the Magistrate Judge recommends dismissal of all of plaintiff's claims of excessive force, except to the extent plaintiff alleges the use of excessive force in connection with the first seizure that occurred on February 24, 2002.  In reaching this conclusion, the Magistrate Judge appears to assume that a jury may be permitted

to determine whether the first seizure was an arrest or an investigatory detention (*id.* at 16).

### 2. Plaintiff's Second Claim for Relief

With respect to the plaintiff's Second Claim for Relief, which alleges violations of 42 U.S.C. § 1983 and malicious prosecution by Defendants Sagan, Blea and Vasconcellos, together with Defendants Wortham, Sandoval and Whitman, the Magistrate Judge found that: (1) the claims against Defendants Sagan and Blea should not be dismissed because there was some evidence that these defendants made false or misleading statements on plaintiff's criminal citation, which under *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) and other case law could give rise to Section 1983 liability if the statements lead to prosecution (Recommendation at 23-27); (2) that the claims against Defendant Vasconcellos should be dismissed because there is no evidence he made any false statements in support of the criminal citation issued to plaintiff (*id.* at 27); (3) that the claims against Defendant Wortham, the Denver City Attorney, must be dismissed because he is entitled to prosecutorial immunity (*id.* at 27); and (4) that the claims against Whitman and Sandoval must be dismissed because plaintiff has shown no "personal participation" by them in the alleged civil rights violation (*id.* at 28-29).

### 3. Plaintiff's Third Claim for Relief

The Magistrate Judge recommended dismissal of plaintiff's Third Claim for Relief because plaintiff had come forward with no admissible evidence to show the existence of a Denver City policy to cover up police misconduct that allegedly violates citizens'

Fourth Amendment rights (*id.* at 30).   Nor had plaintiff come forward with any evidence to show that Defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham or Ramsey authorized or acquiesced in the defendant officers' conduct that allegedly violated plaintiff's Fourth Amendment rights (*id.* at 30-31).   Finally, the Magistrate Judge found plaintiff had offered no evidence of a municipal policy to prosecute individuals mistreated by the police (*id.* at 31).   Accordingly, the Magistrate Judge recommended dismissal of plaintiff's Third Claim for Relief in its entirety.

     4.  Plaintiff's Fourth Claim for Relief

The Magistrate Judge recommended dismissal of plaintiff's Fourth Claim, alleging common law malicious prosecution by the Denver City Attorney Defendants Wortham and Ramsey, on the ground that such claims are barred by the doctrine of prosecutorial immunity.

     5.  Plaintiff's Fifth Claim for Relief

The Magistrate Judge recommended granting defendants' motion as to plaintiff's Fifth Claim, alleging common law outrageous conduct, insofar as it pertains to Defendants Webb, Whitman and Sandoval, on the grounds that these three defendants had no personal involvement in the conduct alleged by plaintiff to be outrageous, and as to Defendants Wortham and Ramsey because they have prosecutorial immunity as to any such claims (*id.* at 33).   Defendants did not move for summary judgment on the Fifth Claim insofar as it pertained to Defendants Sagan, Blea and Vasconcellos (*id.* at 32).

6. Plaintiff's Sixth Claim for Relief

The Magistrate Judge recommended dismissal of plaintiff's claim for injunctive relief because plaintiff conceded in her deposition that she was not seeking an injunction against any of the defendants.

## C.    STANDARD OF REVIEW

Defendants' motion is presented as a motion under Rule 56 seeking partial summary judgment on certain claims as referenced above.  The very purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court must view the factual record in the light most favorable to the nonmovant.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the instant case, plaintiff, now a *pro se* party, did not file a response on the merits to the defendants' motion, but only objected to the use of a copy of her deposition transcript (*see* Dkt. ## 163, 180).  The Magistrate Judge nonetheless found,

11

relying on *Murray v. City of Tahlequah, Okl.,* 312 F.3d 1196, 1200 (10th Cir. 2002), that although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c), F.R.Civ.P. (Recommendation at 9).

Rule 72(b), F.R.Civ.P., provides that the undersigned should make a *de novo* determination upon the record, or upon any additional evidence, of any portion of the Magistrate Judge's Recommendation to which the parties have made specific objection. Because the parties have filed written objections to separate portions of the Recommendation, the Court separately reviews those respective objections.

## D.     REVIEW AND ANALYSIS OF PLAINTIFF'S OBJECTIONS

In plaintiff's Initial Objection (Dkt # 211) she first objects to the Magistrate Judge's characterization of certain facts as "undisputed" and to the description of other facts (Plaintiff's Initial Objection at ¶¶ 1-6).  The Court finds that the factual disputes asserted by plaintiff are primarily over details of the events and are not material to the issues upon which the Magistrate Judge made her Recommendation.

Plaintiff next objects that any references to her deposition transcript, attached to as an exhibit to defendant's motion, on the grounds that the transcript is not accurate and she submitted many pages of corrections after the motion was filed (Plaintiff's Initial Objection at ¶ 7).  While it is true that the Recommendation of the Magistrate Judge does cite to various pages of the plaintiff's deposition transcript, plaintiff has not indicated any specific material testimony referenced by the Magistrate Judge that she claims was not properly recorded.

12

Plaintiff next appears to assert that defendants' claims of qualified immunity and sovereign immunity should not be decided on summary judgment (Plaintiff's Initial Objection at ¶ 8). The Magistrate Judge did not recommend dismissal of any claims based on sovereign immunity. Defenses of qualified immunity can be determined at the Rule 12(b) stage of a case as plaintiff suggests, but they need not be. Questions of qualified immunity may be determined on motions for summary judgment.

Plaintiff further argues over whether the defendants are entitled to qualified immunity for the alleged illegal arrest of plaintiff (Plaintiff's Initial Objection at ¶¶ 9-12). However, the defendants' motion is not directed to that aspect of her First Claim for Relief and therefore her argument is not now pertinent to this order as discussed below.

Plaintiff next appears to be arguing that certain events support her claim of use of excessive force and her objection to a finding of qualified immunity (Plaintiff's Initial Objection at ¶ 13). While this version of the events may be somewhat different than the events as described by the Magistrate Judge, the differences do not support a different result than that recommended by the Magistrate Judge.

In ¶¶ 14 and 15 of her Initial Objection plaintiff again appears to be arguing that her version of the events gives rise to a finding that there was a lack of probable cause to arrest her, but as noted above, the defendants are not seeking summary judgment the issue of the lawfulness of the arrest.

The remaining arguments in ¶¶ 16 through 34 of plaintiff's Initial Objection are essentially duplicative of arguments made in her Second Objection (Dkt. # 215) and are addressed as follows.

In her Second Objection plaintiff first objects to the Magistrate Judge's description of the elements of malicious prosecution in Colorado, urging that a "written statement" resulting in the bringing of a criminal case is not properly one of the elements (Plaintiff's Second Objection at ¶¶ 36-39).[3] The Magistrate Judge cited to the written statements of Defendants Blea and Sagan to support her Recommendation that the malicious prosecution claims against them not be dismissed; however, none of the Magistrate Judge's recommendations for dismissal of the other defendants are based on the absence of a "written statement," but rather on the absence of personal participation (in the case of Defendants Whitman and Sandoval), and prosecutorial immunity (in the case of Defendant Wortham).   Accordingly Plaintiff's Objection on this point is overruled.

Plaintiff next objects to the Recommendation that the malicious prosecution claims against Defendants Wortham and Ramsey be dismissed on the basis of prosecutorial immunity (Plaintiff's Objection at ¶¶ 40-42).   Although plaintiff's Second Objection cites to various Colorado cases that recognize the possibility of a claim for malicious prosecution against prosecutors in a criminal case, those cases require a

---

[3]   Although the last numbered paragraph of plaintiff's Initial Objection was ¶ 35, the paragraphs of her Second Objection are numbered 36 through 46, and the pages are numbered 31-40 (Dkt. # 215).   It appears plaintiff was intending the Second Objection to supplement the Initial Objection, and for ease of reference, the Court will refer to the paragraph numbers used by plaintiff in her Second Objection.

showing not only that the prosecution lacked probable cause, but also that the prosecutors were lacking a "good faith" belief that there was probable cause.  Here, plaintiff argues a lack of probable cause to prosecute her, but makes no showing of a lack of a good faith belief by the prosecutors.  Moreover, her Second Objection here appears to be making the argument regarding a lack of probable cause to prosecute plaintiff in connection with a case she describes as a prosecution of plaintiff for "illegal dumping" as a co-defendant with Lawrence Gomba (Plaintiff's Second Objection ¶ 42).  However, plaintiff's complaint makes no mention of any prosecutorial activity by Defendants Wortham or Ramsey relating to "illegal dumping," nor did any of plaintiff's filings in opposition to the defendants' motion for partial summary judgment (*see* Dkt. ## 163, 180).  Moreover, no issue regarding this alleged conduct was presented before the Magistrate Judge, nor is it adequately presented before this Court.

Plaintiff's Objection cites to an attached "Exhibit S" (Plaintiff's Second Objection ¶ 40), which plaintiff describes as a "summons and complaint" issued to Mr. Gomba.  But the copy filed with the Court is almost completely illegible, and to the extent the Court can decipher what appears on Exhibit S it does not refer to plaintiff at all except one incidental reference to her as a co-defendant in the "investigating/arresting officer's notes."  Plaintiff also contends that the fact she was being prosecuted for "illegal dumping" is somehow shown by a transcript excerpt, apparently from a hearing held before Denver County Judge Mary Celeste, marked as Exhibit T to Plaintiff's Second Objection (*id.* at ¶ 41).  It appears this one-page transcript excerpt presents a fragment of an argument made by Defendant Ramsey in opposition to plaintiff's motion to

dismiss the charges of interference with authority that were pending against her in Denver County Court.  Defendant Ramsey is apparently arguing that the officers had reasonable cause to detain plaintiff at the time of the incidents described above.  None of the arguments is indicative of malicious prosecution as argued by plaintiff.  For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff next objects to the Magistrate Judge's finding that the second seizure on February 24, 2002 was an investigative stop, and that the defendant officers are entitled to qualified immunity since they could not be on notice that the amount of force used in such circumstances was unreasonable (Plaintiff's Second Objection ¶ 43). Plaintiff argues that the second seizure constituted a "second arrest" as she was deprived of her liberty (*id.*).

Plaintiff apparently misperceives the applicable law.   If the so-called "second arrest" is in fact found to be an arrest, then her claim of excessive force is on even weaker ground.  If the second incident is found to be an unlawful arrest her excessive force claim is subsumed in the unlawful arrest claim.  If the second incident is found to be a lawful arrest, then the amount of force permitted would be even greater than if it were an investigative stop, and the defendants would still be entitled to summary judgment.

Plaintiff further argues that Defendants Whitman and Sandoval are "vicariously liable for the aforementioned conduct of the Officers because they condone and encourage such behavior." (Plaintiff's Second Objection ¶ 43).  Even if plaintiff had presented evidence to support this allegation, which she has not, the claims against

16

Defendants Whitman and Sandoval are subject to dismissal.  As the Magistrate Judge correctly stated, supervisors are not vicariously liable for alleged civil rights violations committed by subordinates, absent a showing of "personal participation" or exercise of control or direction, by the supervisor, or failure to supervise, none of which plaintiff has shown by admissible evidence (Recommendation at 28).  For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff's objection appearing at ¶ 44 of her Second Objection is not entirely comprehensible to the Court as it appears to argue that the Magistrate Judge made a finding as to whether the defendant officers acted in a lawful manner in arresting plaintiff, when in fact no such finding has yet been made.  She also appears to reargue that Defendants Whitman and Sandoval can be vicariously liable, but this argument has previously been addressed.  For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff next objects to the dismissal of the outrageous conduct claim against Defendants Wortham and Ramsey on the basis of prosecutorial immunity (Plaintiff's Second Objection ¶ 45).  As noted above, plaintiff has come forward with no evidence that these prosecutors lacked a good faith belief that there was probable cause to prosecute her.  Thus, she fails to offer any basis on which to deny prosecutorial immunity to these defendants.  Plaintiff's Second Objection on this point is overruled.

In ¶ 46 of her Second Objection, plaintiff again argues that the Magistrate Judge erred in recommending that her excessive force claims should be dismissed because, plaintiff states, what occurred on February 24, 2002 was "a full custodial arrest" and

17

"not a lawful investigatory stop" as construed by the Magistrate Judge.  As noted above, if both of the incidents of February 24, 2002 are found to be "arrests" rather than investigatory stops as plaintiff here urges, all of her claims for excessive force are subject to dismissal.  If those arrests are found to be unlawful, the excessive force claims are subsumed in her unlawful arrest claims.  If the arrests are found to be lawful, then the amount of force permitted is greater, and as the Magistrate Judge has found, the amount of force used by Defendants Sagan, Blea and Vasconcellos was reasonable, or they were not on notice that such degree of force was unreasonable in the context of an arrest, and therefore they are entitled to qualified immunity.  Thus, plaintiff's persistence in arguing that the events of February 24, 2002 constitute arrests rather than investigative stops provides no ground for rejecting the Recommendation.

Finally, plaintiff objects to the Recommendation to the extent it recommends that the claims against Defendants Ramsey, Wortham, Webb, Hickenlooper, Sandoval, Whitman, the City and County of Denver, and the claims against Defendants Sagan, Blea and Vasconcellos, in their official capacities, be dismissed (Plaintiff's Second Objection ¶ 47).   This objection sets forth no grounds as its basis.  Moreover, the sentence in the Magistrate Judge's Recommendation where this language appears is merely a summary of the previous recommendations (*see* Recommendation at 35) and does not constitute an independent conclusion.

In summary, the Court overrules all the objections made by plaintiff to the Recommendation of the Magistrate Judge in both her Initial Objection and Second Objection (Dkt. ## 21 and 215).

18

**E.     REVIEW AND ANALYSIS OF DEFENDANTS' OBJECTIONS**

Defendants Sagan, Blea and Vasconcellos first object to that part of the

Recommendation of the Magistrate Judge to the extent it finds that the "first" seizure

on February 24, 2002 could be characterized as an investigative stop, given plaintiff's

repeated statements that such event constitutes an arrest (Defendants' Objection 4-6).

Defendants also object to the Magistrate Judge's finding that the defendant

police officers' conduct could be found to be unreasonable, even if the first seizure is

characterized as an investigative stop (Defendants' Objection 6-8).

Finally, defendants object to the finding that genuine material facts exists as to

the veracity of the statements made by Defendants Blea and Sagan in support of

plaintiff's arrest, so as to support a claim for malicious prosecution against them in

violation of 42 U.S.C. § 1983 (Defendants' Objection 9-11).

1.   Defendants' Objection as to the First Claim for Relief

The Court begins its review of Defendants' Objection from the standpoint that

plaintiff's First Claim for Relief for unlawful arrest and seizure, and her Fifth Claim for

Relief alleging outrageous conduct by the defendant officers, are not the subject of the

Defendants' Motion for Partial Summary Judgment, and are currently set for a jury trial

to commence on June 19, 2006.  Thus the Magistrate Judge is correct in stating that

the determination of whether the seizure (or seizures) of plaintiff were lawful will not be

determined until evidence is presented at trial.

However, even if the Magistrate Judge is also correct in stating that a jury could

also be called upon to determine whether the first incident on February 24, 2002

19

involving a seizure of plaintiff was an "arrest" or an "investigative stop."
(Recommendation at 16), the Court finds based that on the undisputed facts of this
case, including plaintiff's own assertions, that the first incident must be viewed as an
arrest as a matter of law.

Numerous decisions have addressed the differences between the various types
of what have been called the three types of "police/citizen encounters," namely
consensual encounters, investigative stops and arrests.  *See e.g. Oliver v. Woods*, 209
F.3d 1179, 1186 (10th Cir. 2000) and cases cited therein.  In *United States v. Cooper*,
733 F.2d 1360, 1363 (10th Cir.), *cert. denied sub nom., Threat v. United States,* 467
U.S. 1255 (1984), the Tenth Circuit panel described an investigative, or *Terry* [*v. Ohio*,
392 U.S. 1 (1968)]-type stop, as a:

> brief, non-intrusive detention during a frisk for weapons or
> preliminary questioning . . . .  This is considered a seizure
> of the person within the meaning of the Fourth Amendment,
> but need not be supported by probable cause.  In order to
> justify an investigatory stop, the officer need have only
> specific and articulable facts sufficient to give rise to
> reasonable suspicion that a person has committed or is
> committing a crime.

The same decision described an arrest as a "highly intrusive or lengthy search
or detention.  An arrest is justified only when there is probable cause to believe that a
person has committed or is committing a crime."  *Id.*   In *Cortez, supra*, the court found
an arrest had occurred when the defendant police officers had grabbed the suspect by
the arm, pulled him away from the doorway of his home, handcuffed him, and placed
him in the back of a locked squad car.  438 F.3d at 994.

20

Given the identified criteria differentiating an arrest from an investigative stop, it appears to this Court that the events in this case plainly constitute an arrest.  As noted above, the undisputed facts, or at least the claimed facts viewed in a light most favorable to the plaintiff, indicate that at some point during the incident plaintiff was "physically seized and dragged" out of her car (Complaint ¶ 33), surrounded by the defendant officers, and handcuffed with her wrists behind her (*id.* ¶ 34).  She alleges she was dragged backwards by the handcuffs to the patrol car, told that when she was "ready to talk" she would be released otherwise she was "going to jail." (*Id.* at ¶¶ 35-36).  She further alleges that after about ten minutes of being threatened, two of the defendant officers removed her from the patrol car and removed the handcuffs (*id.* at ¶ 37).  She avers that one of officers then told her to sit on the curb until she "decided to tell what they wanted to hear."  *Id.* at ¶ 39.  Eventually plaintiff was told she was "free to leave" after being humiliated in public view.  *Id.* at ¶¶ 39-40.

Given these assertions by plaintiff, which are similar to the facts in *Cortez*, cited above, as well as the other cases of arrests cited by *Cortez*, this Court finds that the first seizure must be characterized as an arrest, and could not reasonably be found to be only an investigative stop.  Moreover, as defendants point out in their Objection, plaintiff herself has consistently taken the position that she was the subject of an arrest, rather than an investigative stop.  Indeed, as set forth above, even in her Second Objection to the Recommendation of the Magistrate Judge plaintiff continues to insist that she was twice arrested (Plaintiff's Second Objection ¶ 43).

As explained above, if the jury determines that the first arrest was unlawful, as plaintiff contends, her excessive force claim will be subsumed in that verdict.  If the jury determines that the first arrest was lawful, then the question remains whether excessive force was used in effecting the arrest.  As discussed above, this Court accepts the analysis of the Magistrate Judge, relying primarily on the *Cortez* decision, that the amount of force used against plaintiff in the context of an arrest was not unreasonable, or at least there was no clear precedent that would have put the defendants on notice that their conduct was unreasonable (Recommendation at 16).  Accordingly, having found that the first seizure of plaintiff was an arrest, the Court concludes that Defendants Sagan, Blea and Vasconcellos are entitled to summary judgment on that part of plaintiff's First Claim for Relief alleging the use of excessive force in effecting the "first arrest."  The Court also accepts the Recommendation of the Magistrate Judge that these defendants are entitled to qualified immunity with respect to the second seizure, whether it is characterized as an arrest or investigative stop.

2.   <u>Defendants' Objection as to the Fifth Claim for Relief</u>

Defendants Blea and Sagan do not disagree with the statement of law expressed by the Magistrate Judge that police officers may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor (Recommendation at 23; Defendants' Objection at 10).  However, these defendants argue that plaintiff did not submit sufficient evidence to show that they made false or misleading statements that led to plaintiff's prosecution, as the Magistrate Judge found.

22

The Magistrate Judge identified the following four statements attributable to Officers Blea and Sagan, apparently made on the criminal citation, which were material to the prosecution of plaintiff for interference with police authority: (1) when plaintiff was asked for identification, she responded that she did not have to give the officer anything and attempted to enter a vehicle to leave; (2) that plaintiff attempted to slam her car door on Officer Blea repeatedly; (3) that plaintiff began screaming and refused to provide identification; and (4) that after plaintiff was handcuffed, she continued to pull away from police yelling (Recommendation at 23-24).

Although there was some uncertainty at the time of the Magistrate Judge's Recommendation as to whether these statements actually appeared on the criminal citation given the fact that an illegible copy was submitted by plaintiff, the Magistrate Judge accepted plaintiff's characterization of the statements as provided in her deposition testimony and interrogatory answers (*id.* at 23-24).  Defendants have now attached a legible copy of the citation and supporting notes as Exhibit A to their Objection, and the Court finds that the above statements do appear in the arresting officer's notes.

Defendants nonetheless argue summary judgment should be entered because plaintiff has not filed a substantive opposition to their motion, thereby conceding the facts as set forth by the defendants (Defendants' Objection at 9-10).  While it is true that plaintiff did not submit substantive responses to the defendants' motion, the defendants themselves submitted exhibits in support of their motion which contained excerpts from plaintiff's deposition (Exhibit A to Defendants' Motion for Partial Summary

23

Judgment) and plaintiff's Supplemental Interrogatory Answers (Exhibit B to Defendants' Motion for Partial Summary Judgment).   The Magistrate Judge found that these documents contain statements by the plaintiff denying the veracity of at least some of the statements contained in the arresting officer's notes, and therefore putting at issue material facts as to whether untrue statements were made by the defendant officers in support of the prosecution of plaintiff (Recommendation at 25).

The Court has reviewed portions of the deposition testimony of the plaintiff contained within Exhibit A to the Defendants' Motion, and a portion of the plaintiff's interrogatory answers contained within Exhibit B to the Defendants' Motion.  The Court finds that plaintiff admitted in her deposition saying to the officer at the outset of the incident that she didn't have to provide identification, but shortly thereafter she did go to her car and get identification in the form of a driver's license (Exhibit A at 106). Plaintiff also expressly testified that she did not attempt to slam her car door on the officers (Exhibit A at 116).   Although plaintiff was not asked whether she was screaming or yelling, she denied that prior to being handcuffed she was "flailing her arms around" (Exhibit A at 121), and she testified that after she was removed from her car she was just standing there (Exhibit A at 122).  In her supplemental interrogatory answers, plaintiff denied that she was acting in a "dramatic [p]hysical manner" as stated in the Officer's notes (Exhibit B to the Defendants' Motion, Part I at 12).

Although these statements by plaintiff may not be emphatic denials of the officers' notes, they provide enough of a contradiction to the officers' statements to present a question for the jury to decide whether false or misleading statements by the

24

officers contributed to the prosecution of the plaintiff.  Moreover, plaintiff's deposition testimony also reveals an apparent omission in the officers' notes, namely that she did eventually produce identification.  In *Taylor v. Meacham,* 82 F.3d 1556, 1562 (10th Cir.), *cert. denied*, 519 U.S. 871 (1996) the court stated that omitting information from an affidavit which, if included, would vitiate the probable cause to arrest might rise to a violation of the right of the arrested person.  Here too, an omission of information by the officers from the notes that led to the prosecution could support a claim for malicious prosecution.

However, proof of false or misleading statements to a prosecutor alone would not be not enough to support a claim of common law malicious prosecution; there is also the requirement that the prosecution be brought maliciously.  *See Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).  In the context of a case such as this, the malice requirement could be met by evidence that the officers' statements were made with malice.  Malice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime.  *See Suchey v. Stiles*, 155 Colo. 363, 366, 394 P.2d 739, 741 (Colo. 1964); C.J.I.-Civ. 4th 17:4.  As the Magistrate Judge correctly found, under Colorado law, malice may be inferred from a lack of probable cause.  See *Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 509, 272 P.2d 643, 646 (Colo. 1954); C.J.I.-Civ. 4th 17:5. Here, the charge against plaintiff was ultimately dismissed for lack of probable cause. Thus a jury arguably may be able to infer from these facts that if the officers supplied false or misleading information to prosecutors, the element of malice is satisfied, taking

into account "all the circumstances surrounding the filing and prosecution of the criminal case" against plaintiff.  *See* C.J.I.-Civ. 4th 17:5.

Thus, the Court agrees with the Magistrate Judge that the plaintiff's claim for malicious prosecution against Officers Blea and Sagan should not be dismissed because there are unresolved issues of material fact that should be submitted to the jury.

**CONCLUSION**

For the reasons set forth above, the Recommendation Of the Magistrate Judge (Dkt. # 208) is adopted in part and declined in part.

Defendants' Motion for Partial Summary Judgment (Dkt. # 144) is therefore GRANTED in part and DENIED in part.

Plaintiff's Objections to the Recommendation (Dkt. ## 211 and 215) are OVERRULED.

Defendants' Objections to the Recommendation (Dkt. # 210) are OVERRULED in part  and SUSTAINED in part.  The are sustained to the extent that Defendants Sagan, Blea and Vasconcellos are entitled to summary judgment on that part of plaintiff's First Claim for Relief alleging the use of excessive force in effecting the "first arrest."  The Court also accepts the Recommendation of the Magistrate Judge that these defendants are entitled to qualified immunity with respect to the alleged use of excessive force with respect to the second seizure, regardless of whether it is characterized as an arrest or investigative stop, and GRANTS that portion of the defendants' motion.

Plaintiff's First Claim for Relief is DISMISSED with prejudice to the extent it alleges use of excessive force by Defendants Sagan, Blea and Vasconcellos, but remains pending as to the claims of unlawful arrest and seizure of plaintiff by those defendants.

Plaintiff's Second, Third and Sixth Claims for Relief are DISMISSED with prejudice in their entirety.

Plaintiff's Fourth Claim for Relief is DISMISSED with prejudice as against Defendants Wortham, Ramsey and Vasconcellos, but remains pending as against Defendants Sagan and Blea.

Plaintiff's Fifth Claim for Relief is DISMISSED as against all defendants other than Defendants Sagan and Blea and Vasconcellos.

DATED: June 2, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____

Phillip S. Figa
United States District Judge